Rory P. Collins
61 King Ave
Weehawken, NJ 07086
(917) 669-7578
rorypcollins@gmail.com

U.S. BANKRUPTCY COURT
FILED
TRENTON, NJ

2017 OCT -2  A 10: 46

_____ A. HAUGHTON

BY _____
DEPUTY CLERK

United States Bankruptcy Court
402 East State Street
Trenton, NJ 08608
Attention: Bankruptcy Court

September 28, 2017

Re: Case number 17-15332-CMG; Debtor: Arthur Christy

Adversary Case No: 17-01607-CMG

## Miscellaneous Motion to Allow Proof of Claim Out of Time

Dear Judge Gravelle,

Please accept this motion to allow my proof of claim out of time. I filed my objection to the discharge of the debtor's debt prior to the September 10, 2017 deadline. Quite frankly, I was not aware of the process and that the Proof of Claim had to be submitted prior to this date.

I have been following the case as best I can through Pacer Monitor. I am not working with an attorney in this matter. I am representing myself as I have spent a significant amount of money on legal fees in my case against Viaco Construction and Anthony Christy, the Debtor's brother, and the head of operations for the Debtor's various construction companies over the past two decades. In addition, I had concerns about making an objection as the Debtor had threatened to drive to my house, drag me outside and beat me to death, in August 2016. While I originally dismissed the thought of that happening and found it ironic that unlike the movies, it was the Debtor making death threats. I only learned afterwards from the debtor's wife at the time, that the Debtor had a gun collection. That, combined with Debtor's erratic behavior, changed things. If the Debtor threatens me again, I will be sure to report it to the proper authorities.

The court should know that I am doing this based on principle, something the Debtor will never understand. I could have walked away from the debt, licked my wounds, and saved tens of thousands of dollars in legal fees over the past year and spent the time doing positive things instead. The Debtor and I were fraternity brothers, great friends, and I thought his word meant something. Based on what I can only explain were the Debtor's desperate personal and business issues, he changed. He decided to abuse our friendship and defraud me of my money under numerous false pretenses. With that, I am taking a stand based on principle and I refuse to let the Debtor get away with defrauding me and defrauding the court. The Debtor ran a business that systematically robbed from Peter to pay Paul, while the Debtor and his brother, Anthony Christy, lived way beyond their means using company funds to pay for excessive personal expenses. The Debtor needs to be held accountable and I am prepared to help make sure that happens. Unlike the Debtor's testimony, mine will be truthful and will backed up with supporting evidence.

Sincerely,

Rory P. Collins

**Fill in this information to identify the case:**

Debtor 1 _Arthur Christy_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the:   District of New Jersey

Case number _17-15332-CMG_

Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| 1. | **Who is the current creditor?** | Arthur Christy |
|---|---|---|
| | | Name of the current creditor (the person or entity to be paid for this claim) |
| | | Other names the creditor used with the debtor _____ |

| 2. | **Has this claim been acquired from someone else?** | ☑ No |
|---|---|---|
| | | ☐ Yes. From whom? _____ |

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Rory P. Collins | Rory P. Collins |
| Name | Name |
| 61King Ave | 61 King Ave |
| Number     Street | Number     Street |
| Weehawken     NJ     07086 | Weehawken     NJ     07086 |
| City     State     ZIP Code | City     State     ZIP Code |
| Contact phone 917-669-7578 | Contact phone 917-669-7578 |
| Contact email rorypcollins@gmail.com | Contact email rorypcollins@gmail.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

| 4. | **Does this claim amend one already filed?** | ☑ No | | |
|---|---|---|---|---|
| | | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ |
| | | | MM / DD / YYYY |

| 5. | **Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No |
|---|---|---|
| | | ☐ Yes. Who made the earlier filing? _____ |

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____  ____  ____  ____

**7. How much is the claim?**   $_____133,561.56 . **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:                              $_____

Amount of the claim that is secured:          $_____

Amount of the claim that is unsecured:  $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:      $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.      $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| | | | Amount entitled to priority |
|---|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check one:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | | $_____ |
| | \* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:    Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/28/2017
                   MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| | | | |
|---|---|---|---|
| Name | Rory<br>First name | Patrick<br>Middle name | Collins<br>Last name |
| Title | | | |
| Company | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 61 King Ave<br>Number    Street | | |
| | Weehawken<br>City | NJ<br>State | 07086<br>ZIP Code |
| Contact phone | 917-669-7578 | Email | rorypcollins@gmail.com |

Rory P. Collins
61 King Ave
Weehawken, NJ 07086
(917) 669-7578
rorypcollins@gmail.com


United States Bankruptcy Court
402 East State Street
Trenton, NJ 08608
Attention: Bankruptcy Court


September 28, 2017


Re: Case number 17-15332-CMG; Debtor: Arthur Christy

Adversary Case No: 17-01607-CMG


# Exhibit A – Proof of Claim


Please see attached excel spreadsheet with supporting calculations as well as Transcript of Court Decision
dated May 5, 2017, Docket No. L-3771-16 in Rory P. Collins Plaintiff. vs. Viaco Construction Corp Et.
Al. Defendants which very clearly details amounts owed as of 5/3/2017, the date of the proof hearing.


Sincerely,

Rory P. Collins

| Viaco Interest Calculation | |
| --- | --- |
| Annual Rate | 15% |
| Monthly Rate (15/12) | 1.25% |

| Date | Loan 1 | Loan 1 Payments | Loan 1 Balance | Notes |
| --- | --- | --- | --- | --- |
| 8/31/2014 | | | $ 57,500.00 | |
| 9/30/2014 | | | $ 57,500.00 | |
| 10/31/2014 | | | $ 57,500.00 | |
| 11/30/2014 | | | $ 57,500.00 | |
| 12/20/2014 | Loan 1 Due Date | $ - | $ 57,500.00 | |
| 12/31/2014 | | $ - | $ 57,755.04 | 12/20/2014 balance x monthly rate x 11/31 |
| 1/31/2015 | | $ - | $ 58,476.98 | prior month end balance x monthly rate |
| 2/28/2015 | | $ - | $ 59,207.94 | prior month end balance x monthly rate |
| 3/31/2015 | | $ - | $ 59,948.04 | prior month end balance x monthly rate |
| 4/30/2015 | | $ - | $ 60,697.39 | prior month end balance x monthly rate |
| 5/31/2015 | | $ - | $ 61,456.11 | prior month end balance x monthly rate |
| 6/30/2015 | | $ - | $ 62,224.31 | prior month end balance x monthly rate |
| 7/31/2015 | | $ - | $ 63,002.11 | prior month end balance x monthly rate |
| 8/31/2015 | | $ - | $ 63,789.64 | prior month end balance x monthly rate |
| 9/30/2015 | | $ - | $ 64,587.01 | prior month end balance x monthly rate |
| 10/31/2015 | | $ - | $ 65,394.35 | prior month end balance x monthly rate |
| 11/30/2015 | | $ - | $ 66,211.78 | prior month end balance x monthly rate |
| 12/31/2015 | | $ - | $ 67,039.42 | prior month end balance x monthly rate |
| 1/31/2016 | | $ - | $ 67,877.42 | prior month end balance x monthly rate |
| 2/29/2016 | | $ - | $ 68,725.88 | prior month end balance x monthly rate |
| 3/31/2016 | | $ - | $ 69,584.96 | prior month end balance x monthly rate |
| 4/30/2016 | | $ - | $ 70,454.77 | prior month end balance x monthly rate |
| 5/31/2016 | | $ - | $ 71,335.45 | prior month end balance x monthly rate |
| 6/30/2016 | | $ - | $ 72,227.15 | prior month end balance x monthly rate |
| 7/31/2016 | | $ - | $ 73,129.99 | prior month end balance x monthly rate |
| 8/31/2016 | | $ - | $ 74,044.11 | prior month end balance x monthly rate |
| 9/30/2016 | | $ - | $ 74,969.66 | prior month end balance x monthly rate |
| 10/31/2016 | | $ - | $ 75,906.78 | prior month end balance x monthly rate |
| 11/30/2016 | | $ - | $ 76,855.62 | prior month end balance x monthly rate |
| 12/31/2016 | | $ - | $ 77,816.31 | prior month end balance x monthly rate |
| 1/31/2017 | | $ - | $ 78,789.02 | prior month end balance x monthly rate |

| | | | |
|---|---|---|---|
| 2/28/2017 | $ - | $ 79,773.88 | prior month end balance x monthly rate |
| 3/31/2017 | $ - | $ 80,771.05 | prior month end balance x monthly rate |
| 4/30/2017 | $ - | $ 81,780.69 | prior month end balance x monthly rate |
| **5/3/2017** | $ - | **$ 81,879.62** | prior month end balance x monthly rate x 3/31 |

| Date | Loan 2 | Loan 2 Payments | Loan 2 Balance | Notes |
|---|---|---|---|---|
| 3/31/2015 | | $ - | $ 50,000.00 | |
| 4/30/2015 | | $ - | $ 50,000.00 | |
| 5/31/2015 | | $ - | $ 50,000.00 | |
| 6/30/2015 | | $ - | $ 50,000.00 | |
| 7/31/2015 | | $ - | $ 50,000.00 | |
| 8/19/2015 | Loan 2 Due Date | $ - | $ 50,000.00 | |
| 8/31/2015 | | $ - | $ 50,000.00 | |
| 9/30/2015 | | $ - | $ 50,000.00 | |
| 10/31/2015 | | $ - | $ 50,000.00 | |
| 11/30/2015 | Payment 1 - Loan 2 | $ 5,000.00 | $ 45,000.00 | |
| 12/31/2015 | | $ - | $ 45,000.00 | |
| 1/29/2016 | Payment 2 - Loan 2 | $ 2,500.00 | $ 42,500.00 | |
| 1/31/2016 | | $ - | $ 42,500.00 | |
| 2/26/2016 | Payment 3 - Loan 2 | $ 2,500.00 | $ 40,000.00 | |
| 2/29/2016 | | $ - | $ 40,000.00 | |
| 3/31/2016 | | $ - | $ 40,000.00 | |
| 4/16/2016 | Payment 4 - Loan 2 | $ 2,500.00 | $ 37,500.00 | |
| 4/29/2016 | Payment 5 - Loan 2 | $ 2,500.00 | $ 35,000.00 | |
| 4/30/2016 | | $ - | $ 35,000.00 | |
| 5/31/2016 | | $ - | $ 35,000.00 | |
| 6/30/2016 | | $ - | $ 35,000.00 | |
| 7/1/2016 | Payment 6 - Loan 2 | $ 1,000.00 | $ 34,000.00 | |
| 7/31/2016 | | $ - | $ 34,000.00 | |
| 8/31/2016 | | $ - | $ 34,000.00 | |
| 9/30/2016 | | $ - | $ 34,000.00 | |
| 10/31/2016 | | $ - | $ 34,000.00 | |
| 11/30/2016 | | $ - | $ 34,000.00 | |
| 12/31/2016 | | $ - | $ 34,000.00 | |
| 1/31/2017 | | $ - | $ 34,000.00 | |
| 2/28/2017 | | $ - | $ 34,000.00 | |

| | | |
|---|---|---|
| 3/31/2017 | $ - | $ 34,000.00 |
| 4/30/2017 | $ - | $ 34,000.00 |
| **5/3/2017** | $ - | $ 34,000.00 |

| Date | Total Loan 1 & Loan 2 Balances (Month End and 5/3/2017) |
|---|---|
| 8/31/2014 | $ 57,500.00 |
| 9/30/2014 | $ 57,500.00 |
| 10/31/2014 | $ 57,500.00 |
| 11/30/2014 | $ 57,500.00 |
| 12/31/2014 | $ 57,755.04 |
| 1/31/2015 | $ 58,476.98 |
| 2/28/2015 | $ 59,207.94 |
| 3/31/2015 | $ 109,948.04 |
| 4/30/2015 | $ 110,697.39 |
| 5/31/2015 | $ 111,456.11 |
| 6/30/2015 | $ 112,224.31 |
| 7/31/2015 | $ 113,002.11 |
| 8/30/2015 | $ 113,789.64 |
| 9/30/2015 | $ 114,587.01 |
| 10/31/2015 | $ 115,394.35 |
| 11/30/2015 | $ 111,211.78 |
| 12/31/2015 | $ 112,039.42 |
| 1/31/2016 | $ 110,377.42 |
| 2/29/2016 | $ 108,725.88 |
| 3/31/2016 | $ 109,584.96 |
| 4/30/2016 | $ 105,454.77 |
| 5/31/2016 | $ 106,335.45 |
| 6/30/2016 | $ 107,227.15 |
| 7/31/2016 | $ 107,129.99 |
| 8/31/2016 | $ 108,044.11 |
| 9/30/2016 | $ 108,969.66 |
| 10/31/2016 | $ 109,906.78 |
| 11/30/2016 | $ 110,855.62 |
| 12/31/2016 | $ 111,816.31 |

| Date | | Amount |
|---|---|---|
| 1/31/2017 | $ | 112,789.02 |
| 2/28/2017 | $ | 113,773.88 |
| 3/31/2017 | $ | 114,771.05 |
| 4/30/2017 | $ | 115,780.69 |
| **5/3/2017** | **$** | **115,879.62** |

| Description | | Amount |
|---|---|---|
| 5/3/2017 Loan Balances | $ | 115,879.62 |
| Attorney Fees of 15% of Loan Balance | $ | 17,381.94 |
| Filing Fees - Complaint | $ | 250.00 |
| Filing Fees - 1/16/2017 motion | $ | 50.00 |
| **Total** | **$** | **133,561.56** |

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, CIVIL PART
HUDSON COUNTY, NEW JERSEY
DOCKET NO. L-3771-16

| | | |
|---|---|---|
| RORY P. COLLINS | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | TRANSCRIPT |
| vs. | ) | of |
| | ) | COURT |
| VIACO CONSTRUCTION CORP. | ) | DECISION |
| ET. AL. | ) | |
| | ) | |
| Defendants. | ) | |

Place: Hudson County Superior Court
Administration Building
595 Newark Avenue
Jersey City, N.J. 07306

Date:  May 5, 2017

BEFORE:

HON.  DANIEL D'ALESSANDRO, J.S.C.

TRANSCRIPT ORDERED BY:

Gina A.  Makoujy, Esq.  (Tesser & Cohen)

APPEARANCE:

GINA MAKOUJY, ESQ. (Tesser & Cohen)
Attorney for the Plaintiff.

Transcriber Karen Antero, AD/T 106
P.O. Box 163
Greendell, New Jersey 07839
(973) 219-4087 / Fax (973) 786-7869
Digitally Recorded
Operator, Shirley Cubillo

1

<u>I N D E X</u>

2

<u>Page</u>

3          COLLOQUY                              3

4

5

3

1  THE COURT: The court heard this matter on
2  May 3 at a proof hearing. The court reserved judgement
3  because I was and still am in the middle of a trial and
4  because I wanted time to review the extensive exhibits
5  that were marked at the hearing. Counsel for plaintiff
6  asked to hear the Court's findings by phone. She made
7  that request that day in court. I granted it. And she
8  followed it with a letter with the same request. And
9  here she is.
10  Counsel, your appearance, please?
11  MS. MAKOUJY: Good afternoon, Your Honor.
12  Gina --
13  THE COURT: Yes?
14  MS. MAKOUJY: I'm sorry, Judge. Gina
15  Makoujy for plaintiff, Rory Collins.
16  THE COURT: All right. Thank you. Good
17  afternoon, counsel.
18  The complaint in this case was filed on
19  September 21, 2016. The plaintiff sued Viacom
20  Construction Corp., Arthur R. Christie (ph.),
21  individually, Anthony Christie, aka Anthony H.
22  Christie, aka Tony Christie, individually and ABC
23  Corps, fictitious name. Viaco and Arthur Christie and
24  Anthony Christie are all in default. The complaint was
25  never amended to add additional defendants. The

4

1  defaults against Viaco, Arthur Christie and Anthony are
2  all confirmed in ACMS.
3  Before the hearing plaintiff's counsel
4  submitted to the court proof that one of the defendants
5  filed a bankruptcy petition. And referring to
6  plaintiff's counsel's letter of April 26, 2017 to the
7  clerk of the Law Division, her letter transmitted to
8  the court, a notice of Chapter 7 bankruptcy case for
9  Arthur Christie, under case number 17-15332-CMG.
10  Arthur Christie filed a bankruptcy petition
11  under that case number and the clerk of the court
12  stayed the proceedings in this court under bankruptcy
13  code against Arthur Christie. At the proof hearing no
14  request for damages against Arthur Christie was made by
15  plaintiff and neither Arthur Christie nor the other
16  defendants filed an answer. Accordingly, there were no
17  cross claims filed by or among the defendants and there
18  were no counterclaims filed against the plaintiff by
19  either or all defendants.
20  This case was subject to a motion filed by
21  plaintiff's counsel to order a final judgement in favor
22  of the all defendants. The court decided that motion
23  on February 22, 2017. The court entered judgement in
24  favor of plaintiff against defendant, Viaco
25  Construction Corp., for $91,500. The court did not

5

1   enter post-judgement interest on the judgement and did
2   not enter judgement against the individual defendants.
3   The court did not, because as noted on the order, the
4   note was not signed by the individual defendants.  And
5   proof hearing was scheduled to determine the amount of
6   damages against the corporate defendants and to
7   determine the liability and damages against the
8   individual defendants if liability against the
9   individual defendants was established.
10          A request to enter default against all
11  defendants was filed with the court on December 8, 2016
12  by plaintiff's counsel.  A request to enter default was
13  supported by exhibits.  The exhibits confirm personal
14  service on each defendant and an affidavit of non-
15  military service as to each individual defendant and
16  each affidavit of non-military service was supported by
17  a Department of Defense manpower report to confirm that
18  neither individual defendant is or was on active
19  military duty.
20          Previously before the default was filed
21  separate affidavits of service were also served for the
22  summons and complaint.  Those separate affidavits of
23  service were filed with the court on October 21, 2016
24  with proof of service.
25          The plaintiff testified at the proof hearing,

6

1   plaintiff testified credibly, he answered all questions
2   directly, he made excellent eye contact with the
3   examiner during direct and with the court when the
4   court addressed plaintiff and his attorney.
5          The plaintiff filed nine exhibits with the
6   court.  Exhibit 1 is the first note between the parties
7   dated August 22, 2014.  A note is signed by the
8   plaintiff and by the corporate defendant.  A note is
9   not signed by the individual defendants.  Note two is a
10  note dated March 20 -- excuse me, March 19, 2015.  It
11  is signed by the corporate defendant and the plaintiff
12  and it was intended to extend the payment period under
13  note 1.  April -- excuse me.  Exhibit 3 is an April 7,
14  2015 e-mail from Tony Christie to plaintiff with Viaco
15  AMEX statements for January 2014 through March 2015.
16  Exhibit 4 is an April 9, 2015 e-mail of Tony Christie
17  to plaintiff with attached corporate spreadsheets.
18  Exhibit 5 is an April 10, 2015 e-mail from Rory Collins
19  to Tony Christie.  Exhibit 6 is an August 13, 2015 e-
20  mail to Rory Collins from a Suzanne Washda (ph.)  with
21  a cash report attached.  Exhibit 7 is an August 14,
22  2015 e-mail from Rory Collins to S. Washda, A.
23  Christie and Rory Collins with a cash report.  Exhibit
24  8 is an August 14, 2015 e-mail from Tony Christie to
25  plaintiff with an attached cash report.  Exhibit 9 is

7

1  plaintiff's calculations of principle interest and
2  cost.
3          During the hearing the court reviewed the
4  complaint on the record with plaintiff and plaintiff's
5  counsel, and the court will review it briefly again.
6  The first count is an action on a promissory note
7  against Viaco and Arthur Christie.  Judgement was
8  previously entered against Viaco on motion and the
9  proceeding against Arthur Christie is stayed.
10         The second count seeks judgement against
11 Arthur Christie individually.  The action against
12 Arthur Christie is stayed.  The third count is for
13 breach of covenant of good faith and fair dealing.  It
14 seeks a judgement against Viaco and Arthur Christie.
15 Judgement was entered against Viaco on motion,
16 proceedings against Arthur Christie are stayed.
17         Fourth count seeks attorneys fees against
18 Viaco and Arthur Christie.
19         The fifth count seeks to pierce avail of
20 limited liability and seeks a judgement against Viaco,
21 Arthur Christie individually and Anthony Christie.
22 Once again, proceeding against Arthur Christie is
23 stayed.
24         Sixth count seeks damages for unjust
25 enrichment against Arthur Christie individually and

8

1  Anthony Christie -- Christie individually.  Proceeding
2  against Arthur Christie is stayed.
3          Seventh count is for fraud against Viaco,
4  Arthur Christie and Anthony Christie.  Judgement
5  previously entered against Viaco, and the proceeding
6  against Arthur is stayed.
7          Plaintiff testified that he and the
8  individual defendants were friends.  He and one of the
9  defendants were co-best men at the wedding of the other
10 individual defendant.
11         The individual defendants reached out to
12 plaintiff seeking to borrow money to sustain their
13 company.  They assured plaintiff that they were a
14 thriving enterprise with contracts on the books for
15 several million dollars worth of business.  They
16 explained to plaintiff that they had cash flow problems
17 and they would be able to promptly repay him upon
18 receipt of payments or advances forthcoming that were
19 due by third party construction projects that were
20 doing business with Viaco.
21         Based upon their friendship and the
22 assurances given to plaintiff.  Plaintiff agreed to
23 loan $50,000.  The loan agreement is evidence by P-1.
24 The agreement is dated August 22, 2014.  Defendant
25 agreed to pay $57,500 within four months  and interest

9

1   as well as other charges avowed below.  The breakdown
2   of the loan was $50,000 principle, 15 percent simple
3   interest, calculated at $7,500.  The amount financed is
4   reported to be $57,500, total payments due were
5   $57,500.  As an entry for a finance charge next to it
6   is NA, quoting first.  That means not applicable.  The
7   annual percentage rate has NA listed against it.  And
8   paragraph 5 says there would be four equal continuous
9   monthly installments for $14,375 each on the 22nd day
10  of each month beginning September 22, 2014 and ending
11  December 20, 2014.
12          Buyer had the right to prepay the loan at any
13  time and if the loan was prepaid or if the loan was
14  refinanced or replaced by a new note, lender agreed to
15  refund the unearned finance charge figured by the rule
16  of 78, a commonly used formula for figuring rebates on
17  installment loans.  The court is unable to determine
18  what that clause means or why that clause is in this
19  note, particularly because in paragraph 4 there says
20  there is no finance charge and there is no annual
21  percentage rate.
22          Paragraph 7 concerns default and entitled the
23  lender to accelerate payments due and owing upon the
24  default of any payment.
25          Paragraph 8 says that if the note is placed

10

1   with a legal representative for collection, then the
2   borrower agrees to pay an attorney's fee of 15 percent
3   of the voluntary balance.  The court assumes that that
4   is a mistaken term.  The court is unable to determine
5   what voluntary balance means.  The court will interpret
6   that paragraph as if the word voluntary wasn't there.
7           And paragraph 9 says any co-borrower signing
8   this agreement agree to be likewise accountable with
9   the borrower for this loan.  There's only one signature
10  on the borrower, and the court finds that this note was
11  signed on behalf of Viaco Construction Company.
12  Curiously, the lender is not identified in the note as
13  Viaco Construction Corp.  and it's not clear from this
14  note whether it was intended to be signed strictly by
15  the company or by an individual on behalf of sole
16  proprietorship or partnership.  Nevertheless, it's
17  clear from the testimony of the plaintiff that he was
18  making the loan to a corporation, Viaco Construction
19  Corp.
20          P-2 is a March 19, 2015 loan agreement which
21  restates the promise to pay $50,000.  This time it says
22  that the borrower will pay to the lender $50,000 as
23  well as other charges avowed below.  Again, this word
24  'avowed', A-V-O-W-E-D, appears in both notes.  The note
25  speaks about, or excuse me, the loan agreement speaks

11

1   about joint and several liability assigned by more than
2   one borrower.  Only one borrower signed it.  In this
3   note it says that the breakdown of the loan is it's a
4   $50,000 loan.  The total of payments due and owing is
5   $50,000 and the repayment states that borrower will pay
6   it back in four equal continuous monthly installments
7   of $12,500 each on the 19th day of each month starting
8   on May 19, 2015 and ending on August 19, 2015.  The
9   second loan agreement does not reference the interest
10  due under the first note.  It makes no mention of any
11  interest due.
12          Paragraph 6 of P-2 says that if borrower
13  doesn't make a payment on time borrower is in default.
14  The lender can then order instant payment of the entire
15  remaining unpaid balance of this loan without giving
16  anyone further notice.
17          Paragraph 7, again, states the obligation to
18  pay 15 percent of the voluntary balance as attorney's
19  fees in addition to the unpaid balance of the loan.
20  This is signed by plaintiff and is signed on behalf of
21  Viaco Construction Corporation.
22          Again, in P-1, the debtor is stated as Viaco
23  Construction Company.  In P-2 the borrower is Viaco
24  Construction Corporation.
25          No explanation was offered as to why there's

12

1   interest due under P-1, why there's no interest due
2   under P-2, and whether or not the interest due and
3   owing under P-1 was to be carried forward under P-2.
4   The date of the agreement for P-1 is August 22, 2014.
5   The date of the agreement for P-2 is March 19, 2015,
6   approximately seven months later.
7          From reading the exhibits, P-1 and P-2, the
8   court can't determine what the understanding was
9   between the parties as to P-1 and P-2 on the face of
10  the documents and we'll look to testimony to explain
11  that.
12          P-3 is filed with the court and it's a series
13  of exhibits that begins with an e-mail from Tony
14  Christie to Rory Collins with a copy to Art Christie.
15  It's on point, the individual defendant spoke to the
16  plaintiff about joining the company.  The plaintiff
17  wanted to better understand the company's finances as
18  part of his due diligence to see if he wanted to become
19  employed by the company or to become a principle in the
20  company.
21          Consequently, the individual defendants
22  directly or through their agents serve and/or employees
23  sent a series of American Express Business Gold Rewards
24  to plaintiff for his review and analysis.  During his
25  review and analysis of their finances he determined

13

1  what the salaries were and determined that they were
2  substantial expenditures without the company for non-
3  business purposes.  He itemized those non-business
4  expenses throughout his testimony at the proof hearing.
5  Testified credibly that he advised his creditors who
6  were also his friends at the time to increase their
7  salary and to cease using business income for personal
8  expenses.
9           At some point as often happens within -- with
10 friends, the parameters of the relationship were
11 obscured by their friendship and their lender/borrower
12 relationship and plaintiff's apparent interest in
13 giving his friends business advice, financial planning
14 advice, I suppose, both as a friend and as a possible
15 employee or investor in the company.
16          P-5 is an e-mail from plaintiff to the
17 individual defendants and in it as he testified he told
18 them to take a larger salary and to stop using business
19 income to cover their personal expenses.  He was
20 critical of their discretionary spending.  And P-5
21 includes a photograph, and the photograph relates to
22 plaintiff's statement in P-5 "there will be no vehicles
23 like this in the Viaco parking lot."  Court's unable to
24 determine what type of car it is.  It is -- court
25 assumes it's a luxury car based upon a fair reading of

14

1  the e-mail.
2           P-6 is the e-mail from Suzanne Washda to
3  plaintiff, copies to the individual defendants.  And
4  she tries to explain the register quick report attached
5  to the e-mail and refers to split entries.  She is not
6  a defendant.
7           P-7 is plaintiff's e-mails to Tony Christie,
8  copy Suzanne Washda and Art Christie, asking them to go
9  over the attachment to P-7 with him at a meeting to be
10 scheduled, and, again, confirms conversations between
11 the parties and concerns raised by plaintiff as to
12 spending within the company for personal expenses,
13 including all of the personal expenses itemized by the
14 plaintiff during his testimony at the proof hearing.
15          P-8 is an e-mail from Tony Christie to Rory
16 Collins and Art Christie.  This is another transmittal
17 of a spreadsheet with comments and edits, according to
18 Tony Christie's e-mail, and some further ideas as to
19 how the income could be increased without increasing
20 costs to the company.  All of this is occurring, all of
21 these conversations, communications, document review,
22 while the company is ongoing and is in the midst of
23 several contracts, several jobs, some of which are
24 referred to in the e-mails.
25          Then as part of P-8 on August 13 plaintiff

**15**

1   sends an e-mail to Suzanne Washda and the individual
2   defendants.  He's highlighting individual expenses
3   incurred for each individual defendant.  He finds
4   certain accounting practices unacceptable and is
5   critical of the way the defendants were conducting
6   business.
7             Once again, under P-2 the agreement was dated
8   March 19, 2015 and the last $12,500 payment was due
9   August 19, 2015.  These e-mails in P-8 are occurring a
10  few days before the last payment was due under P-2.  No
11  mention in these e-mails about mispayments, maturity
12  dates and balances due under the note.  There's nothing
13  in the record to allow the court to find or infer that
14  any of these discussions concerning the business and
15  plaintiff's possible employment in the business or
16  joint venture in the business was intended to relieve
17  the defendants of any responsibility under P-1 or P-2.
18            P-9 is the analysis prepared by the plaintiff
19  of what he says he's owed under P-1 and P-2.  P-9 was
20  referred to at some point as a certification was not,
21  however, certified to by the plaintiff.  The court
22  elicited testimony from the plaintiff.  Plaintiff
23  certified to the truth of P-9 beyond the standing that
24  he would be subject to punishment if P-9 was willfully
25  false.

**16**

1             P-9 begins on August 31, 2014 with an initial
2   loan balance of $57,500.  It shows payments of $5,000
3   on November 30, 2015, $2,500 on January 29, 2016,
4   $2,500 on February 26, 2016, $2,500 on April 16, 2016,
5   $2,500 on 29 -- 4/29/2016, $1,000 on July 1, 2016, and
6   no further payments.  Those payments totaled $16,000.
7   On P-9 plaintiff allocated those payments as follows.
8   $5,000 on November 30, 2015 was payment number 1 under
9   loan number 2 and all subsequent payments are allocated
10  to loan 2.  None are allocated to loan number 1.  The
11  calculation presented to the court shows interest due
12  and owing under each loan and shows that the plaintiff
13  made to the defendant -- to defendants two separate
14  loans, one for $57,500 and one for $50,000 to explain
15  that there were separate loans, not that note number 2
16  was intended to modify, rollover, or reduce loan number
17  1.  Plaintiff calculated interest in P-9 and testified
18  to it to conclude that as of May 3, 2017 the balance
19  due and owing was $81,879.62.  Under loan number 2 he
20  began to calculate what appears to be interest due and
21  owing, but I didn't see any interest charge in loan
22  number 2.  He credits all the payments that I
23  previously recited to loan number 2 and arrives at a
24  balance due and owing of $45,347.84.  He calculated the
25  monthly rent -- excuse me, a monthly interest payment

17

1   from the first note to the second note.
2          The court finds that $81,879.62 is due under
3   the first note.  Court finds that $34,000 is due on the
4   second note.  Court can't find anything in the writing
5   to support an interest charge for the second note.  So
6   that the total due on May 3 for both notes is
7   $81,879.62 plus $34,000 which totals $15,879.62.  The
8   plaintiff calculated that $127,227.46 was due as of May
9   3 for the reasons I've explained.
10         Plaintiff also incurred costs of $250 to file
11  its complaint, $50 to file the motion to enter
12  judgement for total costs of $300.  Total owed plus
13  costs is $116,179.62.  The agreed upon attorney's fee
14  is 15 percent of that amount based upon the note term
15  that the parties agreed to.  15 percent of the amount
16  due and owing is $17,426.94, which I will double check
17  now with the calculator to be sure.  Amount is actually
18  $17,381.94 for a total of $133,561.56.
19         The previous judgement entered against Viaco
20  on motion is vacated.  The actual amount entered
21  against Viaco under the notes is $115,879.62, $300
22  costs, $17,381.94 for attorney's fees all as of May 3,
23  2017.
24         The remaining issue is whether or not
25  plaintiff prevails to pierce the corporate veil to

18

1   recover judgement against Anthony Christie
2   individually.  Plaintiff's counsel submitted a
3   memorandum to the court is support of that theory of
4   recovery.  The court will now review the memo of law.
5   Counsel correctly cites that the corporate veil may be
6   pierced when necessary to prevent a corporation from
7   being used to defeat the ends of justice to perpetrate
8   a fraud, to accomplish a crime or otherwise to evade
9   the law.  There's nothing in this case to suggest that
10  the individual defendants or the corporation attempted
11  to accomplish a crime or to otherwise evade the law.
12         The record is silent as to whether or not
13  there ever were any contracts worth millions of dollars
14  that the defendants had and whether there were any
15  contracts for which the defendants expected payment.
16         The memorandum of law continues to explain
17  that you can pierce the corporate veil when an officer,
18  director, shareholder or member is is the corporation
19  as his individual alter ego and abuses the corporate
20  forum to advance his personal interest.
21         Plaintiff cites New Jersey law which requires
22  two elements to pierce the veil.  First, there has to
23  be a unity of interest in ownership so that the
24  separate personalities of the corporation and the
25  individuals no longer exist.  Second, the circumstances

19

1    must indicate that adherence to fiction of separate
2    corporate existence would sanction or fraud or promote
3    injustice.  Again, there's no allegation of fraud
4    against third parties by the corporation.  Plaintiff's
5    theory is that the members, Arthur and Anthony,
6    defrauded him by inducing him to make two loans that he
7    wouldn't have otherwise made if he knew that the
8    company was using its revenue to pay the personal
9    expenses of either individual defendant or both of
10   them.
11            In determining whether a unity of interest
12   and ownership exists under the first prong counsel
13   cites that favor -- that factors which favor piercing
14   the veil include failure to observe corporate
15   formalities.  There's no evidence before the court as
16   to whether the individuals did or did not observe
17   corporate formalities.
18            Next factor is insolvency of the corporation.
19   There's nothing before the court to determine whether
20   or not the corporation was or is insolvent.
21            Syphoning of funds by a dominant stockholder,
22   it's nothing before the court syphoning.  The
23   individuals were openly using corporate assets to pay
24   personal expenses.  Another factor would be non-
25   functioning of officers or directors.  There's no

20

1    testimony before the court concerning that factor.
2            Lastly, absence of corporate records.
3    There's no proof before the court that there were no
4    corporate records.  The only proofs before the court
5    supplied by plaintiff were the business records sent to
6    plaintiff by defendants.
7            In Banco Popular North America versus Gandhi,
8    a 2005 New Jersey Supreme Court case reported at 184
9    N.J. 161, factors noted by the court also included
10   payment of parents, employees and bills from
11   subsidiary's funds, co-mingling of funds, sharing of
12   chief executive officer, termination of subsidiary
13   source of income.
14            Other cases, citations omitted from these
15   findings, concern syphoning of funds, insolvency, and
16   dissipation of corporation assets by a principle.
17            The court can't conclude from the evidence
18   presented by plaintiff that the individual shareholders
19   totally disregarded the corporate entity and made it
20   into a mere instrumentality for its own affairs.
21   There's no analysis as to the total revenue for the
22   corporation versus the amount of money used by the
23   corporation to pay the individual expenses of the
24   individual directors, shareholders, or officers.  The
25   court can't calculate that ratio because the court

1  doesn't have that information.  Total sales is not
2  before the court.
3            The court can, however, find that to uphold
4  the corporate veil in this context might promote an
5  injustice upon the plaintiff.  The court notes, too,
6  that there is no assertion by the individual defendants
7  or by the corporate defendant that the plaintiff's
8  attempt to pierce the corporate veil must fail.  All
9  defendants are in default.  There is substantial
10 credible evidence that plaintiff's funds were promptly
11 used to pay personal expenses.  In particular, personal
12 expenses for Anthony Christie.  Testimony included
13 personal expenses for Mr.  Christie's mortgage on his
14 house, his cars, his household expenses and some
15 student loans.
16           Accordingly, the court will enter judgement
17 against Anthony Christie individually for the full
18 amount jointly and severally of the amount of the
19 judgement entered in plaintiff's favor against Viaco.
20           Plaintiff's counsel please submit to the
21 court a revised form of judgement.  If you'd be good
22 enough, please, to send that to me by e-mail or regular
23 mail by next Wednesday March 11.  I'd appreciate it.
24           That's the court's findings.  Counsel, you
25 still there?

22

1            MS.  MAKOUJY:  I am, Judge.  Thank you --
2            THE COURT:  All right.  Thank you.
3            MS.  MAKOUJY:  -- for allowing me to
4  participate by phone.
5            THE COURT:  Yes, absolutely.
6            MS.  MAKOUJY:  May I -
7            THE COURT:  Yes?
8            MS.  MAKOUJY:  You said, Your Honor, that I
9  could submit the form of order via e-mail?
10           THE COURT:  Yes.
11           MS.  MAKOUJY:  May I have an e-mail address?
12           THE COURT:  Yes.  If you will stand by one
13 moment.  You'll send it to
14 aiyana.gallardo@njcourts.gov.
15 Aiyana.gallardo@njcourts.gov.  All right?
16           MS.  MAKOUJY:  Yes, I will.
17           THE COURT:  All right.  Thank you.
18           MS.  MAKOUJY:  Thank you, Your Honor, again,
19 for permitting me to participate -
20           THE COURT:  Yes.  You're very welcome.  Have
21 a good day and a good weekend.
22           MS.  MAKOUJY:  Thank you.  Same to you, too.
23           THE COURT:  You're welcome.  Thanks.  Bye.
24 We're off the record.
25                 (Off-the-Record)

23

## CERTIFICATION

I, KAREN A. ANTERO, the assigned transcriber, do hereby certify the foregoing transcript of proceedings in the Superior Court of New Jersey on May 5, 2017, digitally recorded, index number from 3:01:09 p.m. to 3:53:07 p.m., is prepared to the best of my ability and in full compliance with the current Transcript Format for Judicial Proceedings and is a true and accurate compressed transcript of the proceedings as recorded.

*Karen Antero*

_____        August 31, 2017
Karen A. Antero, AOC #106